The People *vs.* Henry Trequier, James Clawsey, and
Lewis Chamberlain. *Conspiracy.*

The defendants, who are journeymen hatters, were in-
dicted, for " being persons of evil minds and dispositions,

"on the twentieth day of November, in the year of our
"Lord one thousand eight hundred and twenty-two, with
"force and arms, did conspire and combine, confederate
"and agree together, to prevent and hinder one Daniel
"Acker from being employed in his business as a hatter,
"and to cause him, the said Daniel Ackre, to be discharged
"from his employment as a hatter," &c.

2d. Count. "That the said Henry Trequier, Lewis
"Chamberlain, aud James Clawsey, did cause and pro-
"cure the said Daniel Ackre to be discharged from his
"employment as a hatter."

3d. Count. "That the said Henry Trequire, Lewis
"Chamberlain, and James Clawsey, did unlawfully con-
"spire, combine, and confederate, and agree together, &c.
"that they would not, nor would either of them work for
"or be employed by any master hatter who had in his
"service any workmen or journeyman engaged in the
"said art, who had not agreed to certain rules adopted by
"the said Henry, Lewis, and James."

4th. Count. "That the said Henry Trequier, Lewis
"Chamberlain, and James Clawsey, in pursuance of the
"said conspiracy, combination, confederacy, and agree-
"ment, between the said Henry Lewis, and James, and
"divers others to the jury unknown, so as aforesaid had,
"the said Henry, Lewis, and James, afterwards, to wit, on
"the said twentieth day of November, in the year afore-
"said, did respectively refuse to work for Jager and Haines
"hatters, unless they, the said Jager and Haines, would
"discharge one Daniel Acker, then in the employment of
"the said Jager and Haines as a hatter, for and on account
"of the said Daniel Acker's not having agreed and sub-
"scribed to certain rules and regulations made and entered
"into, by the said Henry, Lewis, aud James."

NEW-YORK Jan. 1823.

The People *vs.* Henry Trequier, James Clawsey, and Lewis Chamberlain.

Conspiracy is an agreement or combination between two or more persons to do an unlawful act, or to accomplish a purpose lawful in itself, by means that are criminal or unlawful.

After the District Attorney has rested, and the counsel for the prisoner rises to address the jury the District Attorney has no right to interrogate him whether he is summing up, or opening the case to the jury; but the proper mode is for the Court to ask the counsel for the people and the prisoner if they have rested, and if they

NEW-YORK, Jan. 1823.

The People vs. Henry Trequier, James Clawsey, and Lewis Chamberlain.

have, to direct them to proceed.

5th. Count. "That the said Henry Trequier, Lewis "Chamberlain, and James Clawsey, unlawfully and wick-"edly did conspire, combine, confederate, and agree to-"gether, to injure and aggrieve one Daniel Acker, and to "deprive him the means of living."

6th. Count. "That the said Henry Trequier, Lewis "Chamberlain, and James Clawsey, did, by indirect and "unlawful means, injure and aggrieve the said Daniel "Acker," &c.

The facts of the case appeared by the testimony of the prosecutor and Mr. Haines, of the house of Jagar and Haines, that the prosecutor was a hatter, and employed by them in manufacturing hats : that he had worked for them in the summer, and had left the establishment in consequence of the fever, and a few days before the general return of the inhabitants to the city, the prosecutor returned to their employment.

It further appeared, by the testimony, that the prosecutor had served a regular apprenticeship to the business of making hats, and was a good workman, although "not of the first order :" that he was a young man of industrious habits, and had a family to support by his labor.

It also appeared the master hatters of the city had had a meeting, and, in the language of the witness, "had knocked down the wages :" to counteract this agreement among the employers, the journeymen had formed a society, and had agreed not to work under a certain price.

A few days after the prosecutor had joined the employment of Jager and Haines, after the fever, the defendants came to work for the same house, and objected to Mr. Haines to work in company with the prosecutor, alleging he was not a member of the society of journeymen hatters, and that he worked for "knocked down wages." They

objected severely, at different times, but at one time at
least, they all together objected to work in the same shop
with him.   Mr. Haines replied that he would put the pros-
ecutor upon different work, and in another room, which
he did, in order to satisfy them; but they finally refused
and objected to his being employed in the same factory
with themselves at all.

NEW-YORK,
Jan. 1823.

The People
vs.
Hn'yTreq'ier
JamesCla'sey
and Lewis
Chamberlain.

Mr. Haines was desirous to employ the prosecutor, and
advised him to apply to be admitted a member of the
society: he did apply, and attended the meeting of the
society on the three Monday evenings following. The
defendants were there, but he was refused to be admitted,
and was told that a committee would be appointed to in-
quire of Mr. Haines if he did not work under the regular
prices.

Chamberlain came into the shop where the prosecutor
was at work, and began to " blackguard" him, using
rough and threatening language.   The prosecutor replied
he did not wish to be abused and insulted ; that he was
working for an honest living, and at a fair price, and that
he was not working for "knocked down wages."

It further appeared by the testimony of Mr. Haines,
that he had constant employment for the prosecutor :
that he discharged him solely because his other journey-
men refused to work with him : that the prosecutor did
not work for lower wages than the other journeymen he
employed.

It was also proved that after the prosecutor was dis-
charged from the employment of Jagger and Haines, he
was for some time without any employment at all, but
that since, he has obtained some little to do: and that
before he was discharged, he offered to leave the employ-

NEW-YORK. ment of Jagger and Haines, if the society would pay him
Jan. 1823, for the time he had lost.

The People   Upon these facts being made out, *Maxwell, District At-*
vs.
Hn'yTreq'ier *torney,* and *D. Graham,* rested the case.
JamesCla'sey   *Price* offered to prove a conspiracy among the master
and Lewis
Chamberlain. hatters not to employ any journeyman who left his last
place on account of wages, in order to prove that the meet-
ing of the journeymen hatters was for a lawful purpose,
and therefore not a conspiracy. The Court overruled the
evidence, and decided that however objectionable the as-
sociation and agreement of the employers were, it could
not justify the unlawful acts of the journeymen, and re-
fused to hear the evidence.

*Price,* counsel for the defendants, rose to speak to the
jury.

*Maxwell* desired to known whether he was about open
ing the case, or summing up to the jury.

*Price* denied the right of the counsel to an answer, and
contended that the duty of the counsel for the prosecution
extended no further than to lay the evidence fairly before
the jury : that he had no right, by a stratagem, to obtain
the manner of the prisoner's defence : that he could not
be compelled, even by the Court, to expose the prison-
ers' case to be taken advantage of by the counsel for the
people.

*Maxwell* replied that the question put to the counsel for
the defendants was a proper one, and certainly a very
common one ; that he had other witnesses that he should
examine or not, as the circumstances of the case might
require, at present he did not think it necessary to exam-
ine them : that he called upon the counsel for the defend-
ants to say whether he was summing up the case, or open-
ing it to the jury.

The Court, after some deliberation, observed that the proper method was to ask the counsel on each side, if they had closed.

The Court put the following question to Mr. *Maxwell.* Have you rested the case? to which they received an answer in the affirmative. They then put the same question to Mr. *Price*, who likewise answered in the affirmative. The Court then directed Mr. *Price* to sum up to the jury.

*Price* contended that the doctrine of conspiracy was almost new in this country, and referred to the case of the cordwainers of this city, prosecuted during the administration of the Honorable De Witt Clinton, and decided some time during the term of his successor : that the doctrine of conspiracy in England could not be tolerated in this country : it had been used as an engine of State there : that an American judge, whose sentiments were incompatible with such principles, could not countenance it. He contended that the meeting of journeymen hatters was a lawful one : it was for the purpose of counteracting the effects of the meeting and agreement among the master hatters : that if the meeting of the employers was lawful, the meeting and proceedings of the journeymen were also lawful. Where, he observed, would this doctrine of conspiracy end? Instances of a similar nature occurred every day before our eyes, where prosecutions might be instituted, and with success, if this prosecution was successful, and referred to the agreement among the grocers and others, not to purchase goods of the auctioneers, &c.— That the meeting of the journeymen was called for by the previous and unwarrantable agreement among their employers : that there were above one hundred journeymen hatters in the city ; and they, without a single exception, viewed the conduct of the masters as oppressive and

NEW-YORK
Jan. 1823

The People
*vs.*
Hn'yTreq'ier
JamesCla'sey
and Lewis
Chamberlain.

NEW-YORK, unjust: that they had beat the journeymen down to less
Jan. 1823. than Birmingham wages, &c.

The People — He was followed by *D. Graham*, who, in a clear and
*vs.* lucid manner explained the law of the case, and the facts
Hn'yTreq'ier
JamesCla'sey as sworn to by the witnesses.
and Lewis
Chamberlain. — *Maxwell* concluded. He observed that if this was not
a case of importance, he should not trouble the jury by
any observations, but would leave it to them, under the
charge of the Court. He contended that the law of con-
spiracy did not deserve the philippick just uttered against
it by the counsel for the defendants: that it was part of
the law of England, and adopted in this country: that it
had received the sanction of the wisest men of the age
and of former ages. That the case now before the Court
was entirely different from the cases put by the counsel
for the defendants; to wit, of the association of the gro-
cers and hardware merchants in this city, not to purchase
of the auctioneers, &c.: that that association was general,
to effect a general object, and for a lawful, and perhaps a
laudable purpose; here the conspiracy itself was unlawful,
its object was particular: it was the oppression of an in-
dividual; and that however objectionable or unlawful the
conduct of the masters might be, it could not justify the
illegal and cruel proceedings against the prosecutor.

*By the Court.*—"Gentlemen of the jury, Henry Tre-
"quier, James Clawsey, and Lewis Chamberlain, are in-
"dicted for a conspiracy.

"A conspiracy has been defined to be an agreement or
"combination between two or more persons to do an un-
"lawful act, or to accomplish a purpose lawful in itself,
"by means that are criminal or unlawful. It is now the
"most usual remedy for any unlawful combination. The
"cases put by the counsel for the defendants, do not apply

" to the present case. The meeting of the grocers and
" others, was for a lawful purpose : it was, or was supposed
" to be, for the general advantage of the community. The
" object of their association was not directed to the injury
" or ruin of any one individual. In the case now before
" Court, it appears the object of the conspiracy was di-
" rected to the prosecutor alone. They not only remon-
" strated against his being employed in the same establish-
" with themselves, but carried their combination to so great
" an extent as to force the prosecutor to leave his busi-
" ness."

NEW-YORK.
Jan. 1823.

The People
*vs.*
Hn'yTreq'ier
JamesCla'sey
and Lewis
Chamberlain,

The counsel for the defendants contended "that the
" meeting of the master hatters compelled the association
" among the journeymen to counteract what he called the
" unwarrantable measures there adopted : that it was an
" association among the journeymen, in some measure
" compelled on the part of the masters. It may be answer-
" ed that one conspiracy cannot justify another : that how-
" ever objectionable the conduct of the master hatters, may
" be, it is certain, that it furnishes no excuse to the defend-
" ants."

The Court left it to the jury to say whether the acts of
defendants amounted to a conspiracy or not.

The jury immediately returned a verdict of guilty against
each of the defendants.

*Note.—The law relating to conspiracy has undergone a great altera-
tion within a few centuries past. It was taken formerly in a more
confined and limited extent than it is at present. Lord Coke defines
it to be "a consultation or agreement between two or more, to ap-
"peal or indict an innocent person falsely and maliciously, whom
"accordingly, they cause to be indicted or appealed ; and afterward
"the party is lawfully acquitted by the verdict of twelve men." 3
Inst. 43. This, is only one kind of conspiracy, and embraces but a
small portion of those offences now ranked under this title.

NEW-YORK,   Formerly, the most common remedy for this offence was th e writ of con
Jan. 1823.       spiracy which has  given place to the action on  the case for a mali-
⌣⌣⌣⌣⌣⌣      cious prosecution, or for slander, and indictment.   The writ of con-
The People       spiracy has become obsolete, from  the difficulties attending it prose-
     vs.         cution.   It was necessary, 1st.    To show an actual injury to entitle
Hn'yTreq'ier     the party to damages.  2d. To prove that the party  was  lawfully
JamesCla'sey
.and Lewis      acquitted.   But it is presumed  it still may be prosecuted.
Chamberlain.

The' most usual  method is now  by indictment for  conspiracy, and is a
most extensive  remedy, embracing almost every  possible case of
unlawful combination.

The following are some of the leading  principles on indictment for con-
spiracy.

To constitute a conspiracy, it is not necessary.

1. That the  act intended to be committed,  should be  illegal or im-
moral.

2. That it should affect the public at large.

3. That it be affected by false pretences,

What is a conspiracy?

Journeymen confederating and refusing to  work, unless for certain wa-
ges, may be indicted for a conspiracy : notwithstanding the statutes,
which regulate their work  and  wages,  do not  direct  this mode of
prosecution: for this offence  consists in the conspiracy, and  not in
the refusal; and all conspiracies are illegal, though  the subject mat-
ter of them may be lawful.   The Tub. woman v. the London brew-
ers.  8 Wod. 11, 320.

The fact of conspiracy  need not be  proved  upon the trial, but may be
collected by  the  jury from  collatteral circumstances.   1 Blac. Rep
392.   Stra. 141.

Though no  indictment has  been preferred,  or  information laid before a
magistrate, and the only  object proved is to destroy the reputation
of an individual, an indictment for a conspiracy may be supported.—
1 Blac. Rep. 392.

But the object of a conspiracy is not confined to any particular individual
or class of men.   It may be,

1. To injure pubic trade.   8 Mod. Rep. 11.   1 Stra. 144.

2. To affect the public health.   2. Lord Ray. 1179.

3. To violate public police.   6 East. 133.

4. To insult public justice.   4 Burr. 2106.   1 Salk. 174.

Journeymen may each singly refuse  to work, unless they receive an ad-

vance of wages, but if they refuse, by preconcert or association, they may be indicted and convicted of conspiracy. 6 Term. Rep. 636.

If several go to the theatre, by previous agreement, to hiss an actor, or cry down a play, they are guilty of a conspiracy. 2 Camp. 358.

A combination and agreement between the East India Company's officers to resign, is unlawful, and the parties may be indicted for conspiracy. 4 Burr. 2472.

A combination to raise the price of funds by false rumors, is indictable. 3 M. & S. 67.

In conspiracy, the crime is complete by the unlawful agreement; and it is not necessary any act should be done in pursuance of such agreement between the parties. 2 Lord Ray. 1167. 1 Salk. 174.

And yet not positive or direct evidence need be given of the fact of conspiring: but may be inferred from the circumstances of the case. 1 Blac. Rep. 392. 1 Stra. 144.

The gist of a conspiracy is the unlawful confederacy, and the offence is complete when the confederacy is made, and any act done in pursuit of it is no constituent part of the offence. And there is no difference whether the intent be to injure a single individual, or a number of people. Comth. v. Judd et al. 2 Mass. T. Rep. 329.

A combination to commit a crime, is a conspiracy, whether the crime is committed or not. City Hall Rec. vol. 1. p. 169.

A previous conspiracy to defraud may be inferred from subsequent acts. Ibid. p. 192.

An indictment for a conspiracy to the prejudice of people generally, without naming any individual, can be supported. Ibid. vol. 2. p. 22.

Vide Joseph Heath's case. Ibid. vol. 2. p, 54.

It is a conspiracy for two or more persons to combine for the ultimate object of defrauding others, prejudicing their rights, whether the particular act leading to such object is to be perpetrated out of the jurisdiction of this State, or whether contrary to the statute or common law; and whether at the time of the trial, the other conspirators are without the jurisdiction of the court or not, the prosecution against one, originally engaged in the conspiracy, may be maintained. Ibid. vol. 2. p. 61.

NEW-YORK.
Jan. 1823.

The People,
vs.
He'yTreq'ier
JamesCla'sey
and Lewis
Chamberlain.

NEW-YORK, Jan. 1823.

Where two persons are indicted for conspiring, with other persons, to the jurors unknown, to do an unlawful act, and the circumstances on the trial should not be sufficient to show, that one of them conspired with a person not named on the record, he may be found guilty. Ibid. vol. 3. p. 60.

Vide the case of Edward Robbins and John Sheffield. Ibid. vol. 4. p. 1. It is unnecessary, in a prosecution for a conspiracy, to show that any step was taken by the conspirators, or either of them, towards the consummation of the act agreed to be done : it is sufficient, if an agreement to do some unlawful or immoral act existed. Ibid. vol. 4. p. 121.